# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| DAVID CARLTON BROWN, | Civil No. 08-0017 JM (NLS) |
|---|---|
| Petitioner, | |
| vs. | **REPORT AND RECOMMENDATION RE DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS** |
| M.E. POULOS, Warden, et al., | |
| Respondents. | |

## I. INTRODUCTION

David Carlton Brown, a state prisoner proceeding pro se, has filed a Petition for Writ of Habeas Corpus ("Pet.") pursuant to 28 U.S.C. § 2254 challenging his San Diego County Superior Court conviction in case number SCD178177 for one count of selling or furnishing cocaine base and one count of possession of cocaine base. (Lodgment No. 2, vol. 5 at 751-52.) Brown claims his federal constitutional rights were violated for the following reasons: (1) he was denied his federal due process right to a fair trial when members of the jury saw him shackled; (2) his conviction violates the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution; and (3) the jury was improperly instructed on his entrapment defense, in violation of his federal due process right to a fair trial. (Pet. at 6-9; 13-36.)

/ / /

/ / /

/ / /

The Court has considered the Petition, Respondent's Answer and Memorandum of Points and Authorities in Support of the Answer, the Lodgments submitted by Respondent, and all the supporting documents submitted by the parties. Based upon the documents and evidence presented in this case, and for the reasons set forth below, the Court recommends that the Petition be **DENIED**.

## II.    FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct. Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. 28 U.S.C.A. § 2254(e)(1)(West 2006); *see also Parke v. Raley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from these facts, are entitled to statutory presumption of correctness). The facts as found by the state appellate court are as follows:

> On October 15, 2003, San Diego Police Officer William Martinez was engaged in a "buy-bust" operation with his narcotics team. At approximately 7:00 p.m. he encountered appellant. The two talked. Eventually, appellant asked Martinez what he was doing in the area. The officer told appellant he was going for $50 worth of drugs. Appellant asked if Martinez was looking for rock cocaine or marijuana. Martinez said rock cocaine, and appellant stated he could assist him in getting drugs.
>
> Using Martinez's cell phone, appellant called friends and arranged for a delivery of the drugs. The two men went to a second location where they were contacted by a third man in a car. The officer gave appellant two $20 bills and one $10 bill, the serial numbers of which had been recorded. Appellant got into the car with the third man. After five minutes, appellant returned and gave Martinez a baggie containing 3.96 grams of rock cocaine. Appellant had a $10 bill in his hand. Martinez left the area and gave a signal to arrest appellant.
>
> An officer followed appellant, eventually making contact with him. Appellant was with a man and a woman. The woman was found in possession of the $10 bill Martinez gave appellant for the drug purchase.
>
> The man who provided appellant the drugs furnished to Martinez was placed under arrest. In his car officers found the cell phone appellant called before the sale.
>
> Appellant's defense theory was entrapment.

(Lodgment No. 6 at 2.)

## III.    PROCEDURAL BACKGROUND

On November 14, 2003, the San Diego County District Attorney's Office charged David Carlton Brown with one count of selling or furnishing cocaine base in violation of California Health and Safety Code ("Health and Safety") section11352(a), one count of possession of cocaine base for sale in violation of Health and Safety Code section 11351.5 and one count of possession of cocaine base in

violation of Health and Safety Code section 11350(a). (Lodgment No. 1 at 0001-02.) The District Attorney's Office also alleged that Brown suffered prior convictions which made him ineligible for probation, within the meaning of Health and Safety Code section 11352(a) and California Penal Code ("Penal Code") section 245(A)(1). (*Id.*) In addition, the complaint alleged that Brown had served a prison term for Penal Code section 245(A)(1) conviction, within the meaning of Penal Code sections 667.5(b) and 668, and that the prior 245(A)(1) conviction was a "strike" within the meaning of Penal Code sections 667(b) – (i), 1172.12, and 668, California's Three Strikes Law. (*Id.* at 0003.)

Following a jury trial during which he represented himself, Brown was convicted on November 2, 2006 of furnishing or selling cocaine base and possession of cocaine base. (Lodgment No. 2, vol. 5 at 751-52.) At a bifurcated proceeding, the jury also found that Brown had suffered the prior convictions as alleged. (*Id.* at 770-71.)[1]

After the guilty verdict but before he was sentenced, Brown filed a petition for writ of habeas corpus in the San Diego Superior Court (HC17755). (Lodgment No. 43.) On December 1, 2006, Brown filed another habeas corpus petition in the California Court of Appeal (D049891). (Lodgment No. 45.) On December 5, 2006, he was sentenced to a total of six years in prison. (Lodgment No. 1 at 0165.) The Superior Court denied the first habeas petition(HC17755) in an unpublished, written opinion filed on January 30, 2007. (Lodgment No. 44.) Brown then filed a habeas corpus petition on February 6, 2007 in the California Supreme Court (S150045). (Lodgment No. 12.) On March 10, 2007, the court of appeal denied the habeas corpus petition Brown filed in that court (D049891). (Lodgment No. 46.)

Review of Brown's conviction on direct appeal began on June 11, 2007 when appointed counsel filed an opening brief. (Lodgment No. 3.) While the appeal was pending, the California Supreme Court denied the petition Brown filed with that court (S150045), citing *In re Dixon*, 41 Cal.2d 756 (1953).[2] (Lodgment No. 13.) Brown then filed another habeas corpus petition in the California appellate court (D051427). (Lodgment No. 9.) The appellate court ordered that the petition in D051427 be

---

[1] This was Brown's third trial on the charges. The first trial ended in a mistrial after the jury deadlocked eleven to one for conviction. (Lodgment No. 36 at 1-2.) Brown was convicted during the second trial, but the conviction was reversed on appeal. (Lodgment No. 36 at 2-3, 14.)

[2] *Dixon* stands for the proposition that "habeas corpus cannot serve as a substitute for an appeal, and . . . the writ will not lie where the claimed errors could have been, but were not, raised upon a timely appeal from a judgment of conviction" *Dixon*, 41 Cal. 2d at 759.

1 consolidated with Brown's appeal. (Lodgment No. 10.) Brown then filed two more petitions for writ
2 of habeas corpus in the California Supreme Court on November 5 (S157848) and December 24, 2007
3 (S159365), respectively. (Lodgment Nos. 14, 15.)

4 On February 11, 2008, the California Court of Appeal issued an unpublished opinion affirming
5 Brown's conviction and sentence (D050139). (Lodgment No. 6.) Brown then filed a petition for review
6 in the California Supreme Court on February 14, 2008 (S161395). (Lodgment No. 7.) The state
7 appellate court denied the habeas corpus petition that had been consolidated with the appeal the
8 following day (D051427). (Lodgment No. 11A). On April 16, 2008, the California Supreme Court
9 denied the petition for review (S161395). (Lodgment No. 16. ) The state supreme court thereafter
10 denied the two habeas corpus petitions Brown had filed while his appeal was pending, citing *In re Clark*,
11 5 Cal. 4th 750 (1993)[3], *In re Dixon*, 41 Cal. 2d 756 (1953) and *In re Miller*, 17 Cal. 2d 734 (1941).[4]
12 (S159365 and S157848). (Lodgment Nos. 17, 18.)

13 Brown filed a habeas corpus petition pursuant to 28 U.S.C. § 2254 in this Court on January 2,
14 2008 [doc. no. 1]. Respondent filed a Motion to Dismiss and Brown filed a Traverse. (*See* Doc. Nos.
15 12, 15.) The Court denied the motion. (*See* Doc. No. 24.) Brown also filed a Motion for Stay, which
16 the Court denied as well. (*See* Doc. Nos. 23, 33.) In its order denying the Motion for Stay, the Court
17 identified three exhausted claims upon which Brown could proceed and directed Respondent to file a
18 responsive pleading. (Doc. No. 33 at 3-6.) Respondent filed an Answer and a Memorandum of Points
19 and Authorities in Support of the Answer to the Petition on April 3, 2009 [doc. no.38]. Brown did not
20 file a Traverse.

21 / / /
22 / / /
23 / / /
24 / / /
25 / / /

26

---

27 [3] *Clark* bars untimely petitions or petitions which raise claims which were already raised and resolved on direct appeal. *Clark*, 5 Cal. 4th at 765-66.
28

[4] *Miller* stands for the proposition that a habeas corpus petition which is based on the same grounds as a prior petition must be denied if there has been no change in the facts or the law. *Miller*, 17 Cal. 2d at 735.

## IV.  DISCUSSION

### A.  Scope of Review

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in <u>violation of the Constitution or laws or treaties of the United States.</u>

28 U.S.C. § 2254(a) (West 2006) (emphasis added).  As amended, 28 U.S.C. § 2254(d) reads:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was <u>adjudicated on the merits</u> in State court proceedings unless the adjudication of the claim –
>
>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2) (West 2006) (emphasis added).

"[The Anti Terrorism and Effective Death Penalty Act] establishes a 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Womack v. Del Papa*, 497 F.3d 998, 1001 (9th Cir. 2007) (quoting *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)).  To obtain federal habeas relief, Brown must satisfy either § 2254(d)(1) or § 2254(d)(2).  *See Williams v. Taylor*, 529 U.S. 362, 403 (2000).  The Supreme Court interprets § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.* at 412-13; *see also Lockyer v. Andrade*, 538 U.S. 63, 73-74 (2003).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision.  *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991).  If the

dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Lockyer*, 538 U.S. at 75-76); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). A state court, however, need not cite Supreme Court precedent when resolving a habeas corpus claim. *Early v. Packer*, 537 U.S. 3, 8 (2002). "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" *id.*, the state court decision will not be "contrary to" clearly established federal law. *Id.*

**B.     Analysis**

As discussed above, in a previous order the Court identified the three claims Brown alleges in his petition. First, he claims his federal due process right to a fair trial was violated when several jurors saw him in shackles. He argues the state court's denial of his motion for a mistral based on this was an abuse of discretion and that the trial judge's admonition to the jury was ineffective. Second, he argues his right under the Double Jeopardy Clause of the Fifth Amendment was violated when he was subjected to successive trials for the same charges. Finally, he claims the entrapment instructions given to the jury were erroneous and that his due process rights were violated because he was working with law enforcement at the time of the drug sale for which he was prosecuted and should therefore have been immune from prosecution. (Pet. at 6-9, 13-18; Order dated February 3, 2009 [doc. no. 33] at 4-5.)

Respondent contends the state court's adjudication of Brown's first claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. (Mem. of P. & A. in Supp. of Answer at 9-11.) As to claims two and three, Respondent contends they are procedurally defaulted and, in the alternative, are meritless. (*Id.* at 11-15.)

1.     <u>Jurors' View of Brown While He Was Shackled</u>

Brown argues his federal due process rights to a fair trial were violated when jurors saw him shackled during the trial. (Pet. at 6, 9, 15.) He also complains that the state trial judge's admonition about his custodial status and his denial of Brown's motion for a mistrial were in error. (*Id.*) Respondent counters that the state court's resolution of this claim was neither contrary to, nor an

/ / /

unreasonable application of clearly established Supreme Court law.  (Mem. P. & A. Supp. Answer at 10-11.)

Brown raised this claim in the Petition for Review he filed in the California Supreme Court on direct appeal.  (Lodgment No. 7.)  The state supreme court denied the petition without citation of authority.  (Lodgment No. 16.)  Accordingly, this Court must "look through" to the state appellate court's opinion denying the claim as the basis for its analysis.  *Ylst*, 501 U.S. at 801-06.  That court wrote:

1.  *Background*

Appellant represented himself at trial.  The morning after the prosecution rested its case, a short hearing was held out of the hearing of the jury and unrelated to the present issue.  Then, after the jury was seated, appellant made a motion for a mistrial, stating: "[J]urors have seen me in handcuffs, being shackled, being taken into custody."

The trial court asked the jurors collectively if any of them saw appellant in custody.  When there were not affirmative responses, the court told the jury appellant was in custody.  The court asked if that fact would affect any juror's ability to be fair.  The court noted the jurors responded in the negative.  The court denied appellant's motion to dismiss and appellant presented his defense.

After he was convicted, appellant, still acting in propia persona, filed a motion for new trial, arguing the trial court abused its discretion in denying his motion for mistrial.  Appellant argued he was prejudiced when jurors saw him in a courthouse hall in chains and when the trial court informed the jury that appellant was in custody.  Appellant offered no declaration supporting his claim that jurors saw him in shackles.  The trial court denied the motion.

2.  *Discussion*

Appellant revealed his custody status to the jury in an artless motion for new trial based on his claim jurors saw him being shackled.  The trial court inquired of the jury and determined that in fact no juror saw appellant in custody.

A jury's discovery of a defendant's custody status, from whatever source, is to be avoided.  Still, as our Supreme Court state in *People v. Bradford* (1997) 15 Cal.4th 1229, 1336: "[A]n isolated comment that a defendant is in custody simply does not create the potential for the impairment of the presumption of innocence that might arise were such information *repeatedly* conveyed to the jury."  The court noted that juries often legitimately learn of a defendant's custody status and are, nonetheless, provided fair trials.  (*Ibid*.)

The mention of appellant's custody status in this case was fleeting and occurred after appellant himself made a motion that indicated the jury saw him in custody.  The trial court could not address appellant's motion without inquiry of the jurors.  It kept its mention at a minimum and in a brief but adequate fashion inquired if appellant's custody status would affect any juror's ability to be fair.  When no juror stated that it would, the trial moved on.  Appellant could not possibly have been prejudiced by the brief revelation he was in custody.  (See *People v. Bradford*, *supra*, 15 Cal.4th at p. 1336.)

> The trial court acted properly in denying appellant's motions for mistrial and new trial.

(Lodgment No. 6 at 3-4.)

"A criminal defendant has a constitutional right to be free of shackles and handcuffs in the presence of the jury absent an essential state interest that justifies the physical restraints." *Williams v. Woodford*, 384 F.3d 567, 591 (9th Cir. 2004) (citing *Ghent v. Woodford*, 279 F.3d 1121, 1132 (9th Cir.2002) and *Rhoden v. Rowland*, 172 F.3d 633, 636 (9th Cir.1999). A shackling claim brought on federal habeas review, however, is subject to harmless error analysis under *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) which requires the Court to determine whether the shackling had a substantial and injurious effect on the verdict. *Duckett v. Godinez*, 67 F.3d 734, 749 (9th Cir.1995); *Castillo v. Stainer*, 983 F.2d 145, 148 (9th Cir.1992), *amended by* 997 F.2d 669 (9th Cir.1993).

Brown has not established he suffered any prejudice. In the first instance, the record indicates the jury did not see Brown in shackles and was only made aware of the fact that he was in custody when Brown made a motion for a mistrial in front of the jury and told them he was in custody. (Lodgment No. 2, vol. 4 at 536.) The judge appropriately asked the jury whether Brown's custody status would affect any juror's ability to be fair and impartial, and all jurors answered in the negative. (*Id.*) There is simply no evidence that the outcome of Brown's trial was affected in any way by the jury's knowledge that he was in custody. Brown's motions for a mistrial and a new trial were therefore properly denied.

For the foregoing reasons, the state court's resolution of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *Williams*, 529 U.SA. at 412-13. Brown is not entitled to relief as to this claim.

2.  <u>Double Jeopardy</u>

Brown contends his federal constitutional right not to be placed in jeopardy twice for the same crime was violated when he was re-tried on the charges after his first trial ended in a mistrial and his first conviction was reversed on appeal. (Pet. at 7.) Brown raised this claim in the habeas corpus petition he filed in the California Supreme Court on December 24, 2007. (Lodgment No. 15 at 3, 8.) That court denied the petition with citations to *In re Miller*, 17 Cal. 2d 734 (1941), *In re Clark*, 5 Cal. 4th 750 (1993) and *In re Dixon*, 41 Cal. 2d 756 (1953). Respondent argues this claim is procedurally

defaulted because the California Supreme Court's citation to *Clark* constitutes an independent and adequate state procedural bar. (Mem. P. & A. Supp. Answer at 11-13.)

      a.     *Procedural Default*

The Ninth Circuit has held that because procedural default is an affirmative defense, Respondent must first have "adequately pled the existence of an independent and adequate state procedural ground...." *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003). In order to place the defense at issue, Brown must then "assert[] specific factual allegations that demonstrate the inadequacy of the state procedure . . . ." *Id.* The "ultimate burden" of proving procedural default, however, belongs to the state. *Id.* If the state meets its burden under *Bennett*, federal review of the claim is foreclosed unless Brown can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Respondent has specifically alleged that *Clark* is an independent and adequate state procedural bar. (Answer at 11-13.) In *Bennett*, the Ninth Circuit held that a citation to *Clark* after the California Supreme Court's decision in *In re Robbins*, 18 Cal. 4th 770 (1998) is independent of federal review. *Bennett*, 322 F.3d at 581-82. The Ninth Circuit recently found that a citation to *Clark* satisfies Respondent's initial burden to plead adequacy under *Bennett*. *See King v. Lamarque*, 464 F.3d 963, 966-67 (9th Cir. 2006). However, when a state court order invokes more than one procedural bar rule but fails to specify which rule applies to which claims, the state court order does not bar federal review if *any* of the state procedural-bar cases cited "is not adequate and independent." *See Washington v. Cambra*, 208 F.3d 832 (9th Cir. 2000). Respondent has therefore not met his burden under *Bennett* as to the *Dixon* and *Miller* procedural bars. *See Bennett*, 322 F.3d at 586.

      b.     *Merits*

Brown contends his right to be free from repeated prosecution for the same offense, as guaranteed by the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution was violated when he was prosecuted three times for the same offense. (Pet. at 7.) As Respondent points out, however, because Brown's first trial ended in a mistrial and his second conviction was

///

reversed on appeal for reasons other than sufficiency of the evidence, the Double Jeopardy Clause is not a bar to Brown's repeated prosecution. (Mem. P. & A. Supp. Answer at 13.)

"When a trial court declares a mistrial, it all but invariably contemplates that the prosecutor will be permitted to proceed anew notwithstanding the defendant's plea of double jeopardy." *United States v. Scott*. 437 U.S. 82, 92 (1978). The judge in Brown's first trial declared a mistrial after the jury deadlocked eleven to one for conviction. (Lodgment No. 36 at 2.) Because there was a "manifest necessity" for a mistrial to be declared, Brown's second prosecution was not barred by the Double Jeopardy Clause. *Id.* at 92-93.

"The successful appeal of a judgment of conviction, on any ground other than the insufficiency of the evidence to support the verdict, . . . poses no bar to further prosecution on the same charge." *Id.* at 91 (citations omitted). Brown was convicted of the charges at a second trial and successfully appealed on the ground that he was wrongfully denied a complete transcript of his first trial. (Lodgment No. 36 at 5-14.) Because Brown's successful appeal was not based on the sufficiency of the evidence, a third prosecution was not barred by the Double Jeopardy Clause. *Scott*, 437 U.S. at 91.

3.      <u>Entrapment</u>

Brown contends the jury was improperly instructed on the entrapment defense and that he was entitled to immunity because he was working for law enforcement at the time of the crime. (Pet. at 7, 14.) Like the preceding claim, Brown raised this claim in the habeas corpus petition he filed in the California Supreme Court on December 24, 2007. (Lodgment No. 15 at 3, 8.) That court denied the petition with citations to *In re Miller*, 17 Cal. 2d 734 (1941), *In re Clark*, 5 Cal. 4th 750 (1993) and *In re Dixon*, 41 Cal. 2d 756 (1953).

a.      *Procedural Default*

Respondent argues this claim is procedurally defaulted or, in the alternative, it fails on the merits. (Mem. P. & A. Supp. Answer at 11-15.) For ther reasons discussed above in section IV(B)(2), this claim is not procedurally defaulted.

b.      *Merits*.

Brown complains that the trial court abused its discretion by misinstructing the jury on the entrapment defense. (Pet. at 7, 16.) He does not explain exactly what error he alleges occurred. Brown

also claims that he should have been immune from prosecution because he was working under the direction and control of the San Diego Police when he helped Officer Martinez obtain drugs. (*Id.*) Respondent argues that Brown's claim involves the correct application of state law and therefore is not cognizable on federal habeas review. (Mem. P. & A. Supp. Answer at 13-15.)

Respondent is correct in asserting that federal habeas relief is not available for errors involving purely the application of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). An instructional error can form the basis for federal habeas corpus relief, however, if it is shown that "'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.' [citation omitted]." *Murtishaw v. Woodford*, 255 F.3d 926, 971 (9th Cir. 2001) (citing *Cupp v. Naughten*, 414 U.S. 141, 146 (1973)); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). Moreover, the allegedly erroneous jury instruction cannot be judged in isolation. *Estelle,* 502 U.S. at 72. Rather, it must be considered in the context of the entire trial record and the instructions as a whole. *Id.*

"In California, the test for entrapment focuses on the police conduct and is objective. Entrapment is established if the law enforcement conduct is likely to induce a *normally law abiding person* to commit the offense." *People v. Watson*, 22 Cal. 4th 220, 222-23 (citing *People v. Barraza*, 23 Cal. 3d 675, 691 (1979)) (emphasis in original). The California Supreme Court has specifically excluded "[o]fficial conduct that does no more than offer [the] opportunity to the suspect [to commit a crime] — for example, a decoy program — is therefore permissible . . . ." *Id.* at 223. The jury in Brown's case was instructed as follows:

> Entrapment is a defense. The defendant has the burden of proving this defense by a preponderance of the evidence. This is a different standard from proof beyond a reasonable doubt. To meet this burden, the defendant must prove that it is more likely than not that he was entrapped.
>
> A person is entrapped if a law enforcement officer engaged in conduct that would cause a normally law abiding person to commit a crime.
>
> Some examples of entrapment might include conduct like badgering, persuasion by flattery or coaxing, repeated and insistent requests, or an appeal to friendship or sympathy.
>
> Another example of entrapment would be conduct that would make commission of the crime unusually attractive to a normally law-abiding person. Such conduct might include a guarantee that the act is not illegal or that the offense would go undetected, an offer of extraordinary benefit, or other similar conduct.

> If an officer simply gave the defendant an opportunity to commit the crime or merely tried to gain the defendant's confidence through reasonable and restrained steps, that conduct is not entrapment.
>
> In evaluating this defense, you should focus primarily on the conduct of the officer. However, in deciding whether the officers' conduct was likely to cause a normally law-abiding person to commit this crime, also consider other relevant circumstances, including events that happened before the crime, the defendant's responses to the officers' urging, the seriousness of the crime, and how difficult it would have been for law enforcement officers to discover that the crime had been committed.
>
> When deciding whether the defendant was entrapped, consider what a normally law-abiding person would have done in this situation. Do not consider the defendant's particular intentions or character, or whether the defendant had a predisposition to commit the crime.
>
> If the defendant has proved that it is more likely than not that he sold or furnished the cocaine base or possessed the cocaine base for sale because he was entrapped, you must find him not guilty of selling or furnishing cocaine base or possessing cocaine base for sale.

(Lodgment No. 1 at 0134-35.)

It is evident from the above quote that the entrapment instruction given to the jury comported with the definition of the entrapment defense in California. There was no error in the instruction, and consequently there was no due process violation. *See Henderson*, 431 U.S. at 154; *Cupp*, 414 U.S. at 146; *Murtishaw*, 255 F.3d at 971.

The second portion of Brown's claim is that he should have been permitted to argue he was immune from prosecution because he was working for law enforcement when he assisted police in obtaining the drugs. (Pet. at 7, 16.) In the context of a trial court's failure to give an instruction on a theory of the defense, the Ninth Circuit has noted that "[u]nder the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness . . . [which] require that criminal defendants be afforded a meaningful opportunity to present a complete defense." *Bradley v. Duncan*, 315 F.3d 1091, 1098-99 (9th Cir. 2002) (citing *Mathews v. United States*, 485 U.S. 58, 63 (1988) and *California v. Trombetta*, 467 U.S. 479, 485 (1984)). Thus, a "'[f]ailure to instruct on the defense theory of the case is reversible error if the theory is legally sound and evidence in the case makes it applicable.'" *Clark v. Brown*, 450 F.3d 898, 904-05 (9th Cir. 2006) (quoting *Beardslee v. Woodford*, 358 F.3d 560, 577 (9th Cir. 2004)); *Solis v. Garcia,* 219 F.3d 922, 929 (9th Cir. 2000); *Bashor v. Risley*, 730 F.2d 1228, 1240 (9th Cir. 1984) (stating that "[a] criminal defendant is

entitled to adequate instructions on his or her theory of defense") (quoting *James v. Reese*, 546 F.2d 325, 327 (9th Cir. 1976).)

Under California Health and Safety Code section 11367, "[a]ll duly authorized peace officers, while investigating violations of [California's drug laws] in performance of their official duties, and any person working under their immediate direction, supervision or instructions, are immune from prosecution under this division." (Cal. Health & Safety Code § 11367.) The California Supreme Court has stated that "section 11367 immunity 'reflects a legislative recognition that the investigation of suspected narcotics violations often necessitates the employment of undercover agents and *persons secretly working under their direction* who must pose as addicts, users, or sellers, and in so doing may be required to commit acts which would otherwise violate division 10 [of the Health & Safety Code] by possessing, furnishing, selling, or transporting controlled substances.'" *People v. West*, 224 Cal. App. 3d 1337, 1345 (1990) (quoting *People v. Backus*, 23 Cal. 3d 360, 382 (1979)) (emphasis added). In order for this statute to apply, a defendant must have an objectively reasonable and good faith belief that he is working as a police informant. *People v. Lucero*, 203 Cal. App. 3d 1011, 1018 (1988); *see also People v. Lo Cicero*, 71 Cal. 2d 1186, 1189 (1969) (holding that where there is no evidence defendant was acting under immediate direction of police officer or that he was asked by police to engage in narcotics transactions to gain information for police, no instruction on immunity was required).

There is simply no evidence that Brown had an objectively reasonable belief he was secretly working under police direction when he obtained the cocaine base for Officer Martinez. (*See* Lodgment No. 2, vol. 3 at 375-500 [testimony of Officer Martinez].) Thus, there was no due process error in failing to instruct on this defense. *Clark*, 450 F.3d at 904-05.

## V.  CONCLUSION AND RECOMMENDATION

The Court submits this Report and Recommendation to United States District Judge Jeffrey T. Miller under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California. For the reasons outlined above, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered denying the Petition.

/ / /

1   **IT IS ORDERED** that no later than ***December 22, 2009***, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

4   **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than ***January 7, 2010.*** The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

DATED: November 24, 2009

Hon. Nita L. Stormes
U.S. Magistrate Judge
United States District Court